ANNA B. SLOANE, Plaintiff, *v.* UNITED FEATURE SYNDICATE, INC., Defendant.

City Court of New York, New York County, December 3, 1929.

*Clarence E. Sutherland,* for the plaintiff.

*De Witt & Van Aken,* for the defendant.

SHIENTAG, J. Plaintiff, a writer, agreed with the defendant to proceed to the Orient at her own expense, and while there to write, prepare and forward to defendant certain articles, sketches and interviews under designated headings which defendant was to syndicate and have published. For such services plaintiff was to receive fifty per cent of the gross proceeds of such syndication and publication. Defendant was to render to plaintiff statements of account between the first and tenth of each month following the date

of first publication and to remit at such times all sums of money due plaintiff. Certain other provisions respecting the performance of the contract were incorporated therein, none of which, however, substantially changed the tenor of the contract or the relationship of the parties. Plaintiff alleges a failure on the part of the defendant to furnish the statements and to make the remittances as agreed. She also alleges that defendant wrongfully terminated the agreement, as a consequence of which she sustained damage, consisting, among other things, of moneys expended for traveling and living expenses.

The common-law action of account is of ancient origin, dating back to the early years of the thirteenth century. By statute its application was extended to bailiffs of moneys, certain classes of guardians and partners. (Holdsworth, History of English Law, vol. 2, p. 367.) The action at common law was limited in its scope, cumbersome in its methods and ineffective in its application. The organization of the Court of Chancery, with its improved machinery, more liberal procedure and its willingness to devise means to get around many of the technical rules at law resulting in hardship and injustice, furnished a tribunal that was peculiarly fitted to assume charge of matters involving the taking of accounts. So that, writes Holdsworth, "we are not surprised to find that by the end of the fifteenth century the mere fact that the case involved the taking of accounts was sufficient ground for the interposition of the chancellor." (Vol. 5, p. 588.)

The rivalry and conflict which ensued between the common-law courts and the courts of equity, one of the most fascinating chapters in legal history, resulted in a liberalization, according to then existing standards, of the procedure and jurisdiction of the law courts. That had to be done to meet the increasing competition of equity. The lines of demarcation between the two jurisdictions began to be more sharply drawn. The growing tendency on the part of equity to assume concurrent jurisdiction in all cases involving the taking of accounts, irrespective of the relationship of the parties, was halted. With respect to certain relationships, however, such as trustee and *cestui*, guardian and ward, and partnership, the common-law courts either could not act at all because of certain limitations on the right to sue, or could not act effectively. The jurisdiction of equity to deal with these subjects was so firmly entrenched that it became exclusive and has remained so to this day.

If we examine the older cases we find that the jurisdiction of equity in matters involving the taking of accounts may be listed under three heads: 1. Where the accounts are complicated and

intricate. 2. Where a discovery is required. 3. Where a fiduciary relation exists between the parties. The first ground of equity jurisdiction no longer prevails. (Compare *Taff Vale Ry.* v. *Nixon*, [1847] 1 H. L. Cas. 111, with *Niehaus* v. *Niehaus*, 141 App. Div. 251, 253.) Under our improved modern practice it is no longer necessary to use the "strong language" referred to by Lord CAMPBELL to a "wrongheaded client who is fool enough to resist" a recommendation of the judge that an action at law before a jury involving a long account be sent to a referee. (*Taff Vale Ry.* v. *Nixon, supra*, at p. 125.) A court of law now has full power to order a compulsory reference. The second ground of equity jurisdiction, the requirement of a discovery, has no application now, when a court of law has power to require an examination before trial and a discovery and inspection.

To-day we are concerned mainly with the third ground of jurisdiction — the relationship of the parties. Where the accounting is one that involves a trustee and *cestui que* trust, a guardian and ward, or a partnership, the exclusive jurisdiction of equity is clear. Where the accounting concerns a *quasi* partnership, a joint enterprise or venture involving some, but not all, of the elements of a partnership, including a relationship of trust and confidence between the parties, equity likewise retains jurisdiction. It is questionable, however, whether it is the relationship *per se* which confers equitable jurisdiction or, rather, the nature of the relief demanded, which is usually for a dissolution, a receiver or to impress a constructive trust — remedies which only a court of equity has power to grant. It is only when the joint venture has been wound up and a balance struck that a court of law is competent to act. The contrary is true where the accounting involves the relationship of employer and employee. In such cases, barring most unusual circumstances, a court of law is in a position to grant all the relief which may be demanded.

In the instant case it is clear that the parties were not in any sense partners. An agreement to share in the gross profits merely as a basis of compensation is not a partnership; it is not a joint venture in the technical sense of that term; it is solely a contract of employment. (*Marston* v. *Gould*, 69 N. Y. 220, 225.) The same is true of an agreement to share in the net profits of a business by way of compensation for services. (*Smith* v. *Bodine*, 74 N. Y. 30; *Zuby* v. *Height*, 188 N. Y. Supp. 88; *Boice* v. *Jones*, 106 App. Div. 547, 551.) An action to recover for money due under such a contract is an action at law; it does not lose its character as such merely because in order to arrive at the amount due a long and complicated account has to be taken between the parties and books

and vouchers produced and examined. (*Niehaus* v. *Niehaus*, *supra; Clements* v. *Cooper*, 136 N. Y. Supp. 93; *Moore* v. *Coyne*, 113 App. Div. 52, 54; *Smith* v. *Bodine, supra.*)

An employee who works for a percentage of the profits of an enterprise, whether gross or net, is in a certain sense engaged in a joint venture with his employer. What he will receive, if anything, depends upon the success of the enterprise. He has no interest, however, in the property of the enterprise. His only interest is in the profits, and that solely by way of compensation for his services. The relationship between him and his employer is legal rather than equitable in its nature. (*Schantz* v. *Oakman*, 163 N. Y. 148.) If out of such legal relationship there arises a claim of fraudulent dealing or misconduct of one of the parties, for which there is no adequate remedy at law, a different situation may be presented. The question of equity jurisdiction in that event would be determined, not by the relationship of the parties *per se*, but by the nature of the contract, the character of the misconduct and the adequacy of the remedy at law therefor. The contract in this case is one of employment; the only claim is for money had and received and for breach of the contract, for which there is an adequate remedy at law. The motion to dismiss the complaint for want of jurisdiction is denied. Settle order on notice.